## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

CAROL IRENE RATULOWSKI,

          **Plaintiff,**

        **v.**                          **Case No. 09-C-270**

COMMISSIONER OF SOCIAL
    SECURITY ADMINISTRATION,

          **Defendant.**

## DECISION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

Carol Irene Ratulowski ("Ratulowski"), proceeding pro se, appeals the decision of the Commissioner of Social Security denying her Disability Insurance Benefits ("DIB") and Children's Insurance Benefits ("CIB"). Ratulowski was previously found eligible under both programs but as part of a continuing review process, Ratulowski's benefits were terminated in 2000. (Docket No. 23 at 2.) Ratulowski was also found eligible for Supplemental Security Income ("SSI") as of February 28, 1979 due to a Listing level neurological impairment resulting from a 1979 car accident. (R. 12.) She continues to receive SSI benefits and her eligibility under this program is not disputed.

Following a hearing, an administrative law judge ("ALJ") found that Ratulowski was not entitled to DIB because she suffered from "no severe impairment or combination of impairments which began on or before December 31, 1978, the date on which she was last insured for benefits under Title II." (R. 11.) Further, the ALJ found that she was not eligible for CIB because she suffered from no severe impairment or combination of impairments "which began on or before August 19, 1976, the date on which she attained the age of 22." (R. 11.) The Appeals Council

denied Ratulowski's request for review on January 20, 2009 and thus the decision of the ALJ became the final decision of the Commissioner.

This is a somewhat unusual case. Contrary to the ALJ's boilerplate recitation that "[t]he claimant was not under a 'disability' within the meaning of the Social Security Act, at any time on or before the date of this decision," (R. 15), there is no dispute that Ratulowski is presently disabled and has been for more than three decades. (See Docket No. 23 at 2.) Rather, the dispute is whether Ratulowski was disabled on December 31, 1978 (the date she was last insured for DIB), two months earlier than the date the Social Security Administration previously determined, or whether she was disabled prior to August 19, 1976 (the date she turned 22 years old for CIB), and continuously until February 28, 1979, the date she was found disabled. Thus, the Commissioner and now this court are tasked with determining Ratulowski's disability status more than 30 years ago.

Not unexpectedly, the evidence of Ratulowski's condition more than 30 years ago is scant. (See, e.g., R. 218.) Nearly all the medical records contained in the record are from 2006 or later. The exceptions are approximately 14 pages from 1975 and a single page from 1979. Although under certain circumstances recent records might present some evidence of a claimant's condition three decades earlier, obviously the most probative information would be expected to be found in contemporaneous records.

Ratulowski alleges that following a miscarriage she suffered on September 25, 1975, she became disabled as a result of seeing the fetus in the hospital following the miscarriage. She described this experience as "a little traumatic." (R. 78, 229.) According to the medical records, Ratulowski underwent a surgical procedure following this miscarriage that she tolerated well, and she went home the next day. (R. 186, 188.) A follow-up examination in November of 1975 indicated no problems. (R. 186.)

2

The only other medical evidence from the 1970s is a single page of a medical report dated June 14, 1979, regarding a urinary problem. (R. 156.) Notably, this is outside the relevant time period.

**STANDARD OF REVIEW: SUBSTANTIAL EVIDENCE**

The court is limited to determining whether the ALJ's factual findings are supported by "substantial evidence." Young v. Barnhart, 362 F.3d 995, 1001 (7th Cir. 2004). The court may not re-weigh evidence, resolve conflicts in the record, decide questions of credibility, or substitute its own judgment for that of the Commissioner of the Social Security Administration ("Commissioner"). Id.; Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).

The substantial evidence burden is satisfied when the evidence is such that a reasonable mind might accept it as adequate to support a conclusion. Williams v. Apfel, 179 F.3d 1066, 1071 (7th Cir. 1999). Although a mere scintilla of proof will not suffice (Butera v. Apfel, 173 F.3d 1049, 1055 (7th Cir. 1999)), substantial evidence may be something less than the greater weight or preponderance of the evidence. Young v. Sullivan, 957 F.2d 386, 388 (7th Cir. 1992). If the ALJ rejects uncontradicted evidence, reasoning for that rejection must be clearly articulated. Id.; Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987). If the ALJ's decision rests on a credibility determination, this court will overturn that determination only if it is patently wrong. Powers v. Apfel, 207 F.3d 431, 435 (7th Cir. 2000). Special deference is appropriate because the ALJ is in the best position to see and hear the witness and to determine credibility. Id. at 435.

Finally, if the ALJ committed an error of law, this court may reverse the Commissioner's decision, regardless of whether it is supported by substantial evidence. Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989).

**ANALYSIS**

Ratulowski is entitled to CIB only if she was disabled before she turned 22 years old. There are also a number of other statutory requirements that are not at issue in the present case. See 42 U.S.C. § 402(d). Similarly, Ratulowski is entitled to DIB only if she was disabled before she was last insured.

A person is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).

Applying the five-step disability analysis set forth in 20 C.F.R. § 404.1520, the ALJ did not proceed beyond Step Two, because he determined that "the medical evidence fails to describe any 'severe' medically determinable impairment which imposed more than a minimal limitation on her work capacity beginning on or before she attained the age of 22 or beginning on or before the expiration of her insured status under Title II." (R. 13.)

Based upon the information contained in the record, a reasonable person certainly could arrive at the ALJ's conclusion that Ratulowski was not suffering from a severe impairment during the relevant time periods. The only medical evidence from this time period is that Ratulowski underwent a fairly routine medical procedure that she tolerated without complications and was able to be released from the hospital the very next day.

The only suggestion of any lingering effect from this incident are Ratulowski's own statements such as that in her complaint where she stated, "My miscarriage disabled me to have surgery and was traumatic for me," (Docket No. 1 at 3), and her testimony at the hearing before the ALJ that this incident "was a little traumatic to me at the time, and I was off work at the time," (R. 229).

4

Additionally, in her application for disability benefits, she alleges a disability onset date of September 25, 1975, (R. 58), which is the date of the miscarriage, but does not allege any complication emerging from the miscarriage as a reason why she is disabled. Rather, she refers only to "problem's [sic] with the weather, leg shorter then [sic] other very painful right ankle that has broken bone chip's [sic] my spine for no apparent reason is excruciating and imobilize's [sic] me without warning." (R. 61.)

In another report, Ratulowski similarly states that she suffers from "back spasms bad ankle that has been injured twice broken bone chips inside ankle. I can't stand to [sic] long or sit [to] long." (R. 70.) She states that these problems first arose in July of 1975 and led to her being unable to work the following month. (R. 70.) She then states in the margin that these problems were made worse by a 1979 auto accident. (R. 70.) At the close of this document, Ratulowski refers to her miscarriage in September of 1975 and states that this "ordeal was sumwhat [sic] tramatic [sic] at the time." (R. 78.) In a letter to the ALJ submitted after the hearing, Ratulowski states that she had "flashbacks for a while" after the miscarriage. (R. 121.)

The medical evidence indicates that Ratulowski suffered a miscarriage, underwent a surgical procedure, and it is fair to assume that she was unable to work for some limited amount of time as a result. However, there is absolutely no medical evidence indicating that during the relevant time periods Ratulowski was unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Therefore, this court cannot conclude that the ALJ's decision that Ratulowski was not disabled was not supported by substantial evidence.

This does not end the court's analysis, because Ratulowski appeared before the ALJ pro se. Therefore, the court finds it necessary to consider whether Ratulowski properly waiver her right to counsel.

**Waiver of Counsel**

"A claimant has a statutory right to counsel at disability hearings." Thompson v. Sullivan, 933 F.2d 581, 584 (7th Cir. 1991) (citing 42 U.S.C. § 406; 20 C.F.R. § 404.1700). If a claimant is properly informed of the right to counsel, a claimant may waive it. Castrejon v. Apfel, 131 F. Supp. 2d 1053, 1056 (E.D. Wis. 2001) (citing Thompson, 933 F.2d at 584. To ensue that a claimant's waiver of counsel is proper, the Seventh Circuit requires the ALJ "to explain to the pro se claimant (1) the manner in which an attorney can aid in the proceedings, (2) the possibility of free counsel or a contingency arrangement, and (3) the limitation on attorney fees to 25 percent of past due benefits and required court approval of the fees." Binion v. Shalala, 13 F.3d 243, 245 (7th Cir. 1994). This court's comments in 2001 are directly relevant to this present case:

> Notwithstanding the clear directive of the Seventh Circuit, the administrative agency in this district apparently still fails to properly apply the law in regard to obtaining a waiver of counsel. A review of the record in this case is illustrative of what has occurred in other cases; the claimant is simply not fully informed of the right to counsel. As a result, the claimant's waiver is defective.

Castrejon, 131 F. Supp. 2d at 1056.

Prior to the hearing, the ALJ mailed Ratulowski a letter wherein he stated the following regarding her right to representation:

> You may choose to be represented by a lawyer or other person. A representative can help you get evidence, prepare for the hearing, and present your case at the hearing. If you decide to have a representative, you should find one immediately so that he or she can start preparing your case.
>
> Some private lawyers charge a fee only if you receive benefits. Some organizations may be able to represent you free of charge. Your representative may not charge or receive any fee unless we approve it.

6

> We have enclosed the leaflet 'Social Security and Your Right to Representation.' We
> are also enclosing a list of groups that can help you find a representative.

(R. 32-33.) Although a list of groups that might help her find a representative is included in the record, the leaflet 'Social Security and Your Right to Representation,' is not.

At the hearing, the ALJ's discussed whether Ratulowski had made efforts to obtain someone to represent her at the hearing. (R. 217.) Ratulowski states that she did attempt to find a representative but no one would agree to represent her. (R. 217.) The ALJ notes that potential problems in obtaining medical records from 30 years ago, combined with the fact that a likely only a very small amount of retroactive benefits would be available might be reasons why it was difficult for Ratulowski to obtain a representative. (R. 219.) Ratulowski declined the ALJ's offer to adjourn the hearing to permit her time to get a representative, (R. 220), and in response to his question, "So you waive your right to representation. Is that correct?" Ratulowski responded, "Yes, I'll leave it in your hands." (R. 220.) The ALJ then goes on to clarify that he is not her representative but that he will "help you develop the record, and, and, I will listen to your testimony." (R. 220.)

Primarily through the letter he sent prior to the hearing, (R. 32), the ALJ did adequately inform Ratulowski of how an attorney may be able to assist her in her claim, and he appropriately informed her of the availability counsel on a free or contingency fee basis, (R. 34-36). Notwithstanding, although the ALJ does discuss that any fee charged must be approved by the Social Security Administration, the record does not contain any indication that the ALJ informed Ratulowski that any fees charged would be capped at 25 percent of past due benefits and required court approval of the fees. This explanation is required under longstanding Seventh Circuit law. Therefore, Ratulowski's waiver of counsel was invalid.

However, remand for a new hearing is not necessarily required. Rather, the sanction for this invalid waiver is that the burden shifts to the Commissioner to demonstrate that the ALJ appropriately developed the record. Binion, 13 F.3d at 245. "Once the [Commissioner] establishes

7

that the record was developed fully and fairly, the plaintiff has the opportunity to rebut this showing by demonstrating prejudice or an evidentiary gap. Prejudice may be demonstrated by showing that the ALJ failed to elicit all of the relevant information from the claimant." Id. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient to warrant a remand. Instead a claimant must set forth specific, relevant facts--such as medical evidence--that the ALJ did not consider." Nelms v. Astrue, 553 F.3d 1093, 1098 (7th Cir. 2009) (internal citation omitted).

There is obviously a significant lack of information in the record. However, a paucity of evidence does not mean that any additional relevant evidence exists. The ALJ explicitly attempted to elicit additional relevant information from Ratulowski. He asked Ratulowski if she had any additional medical records from the relevant time period and when she said that she did but they were at home, the ALJ stated he would leave the record open for two weeks to give her time to submit these records; he provided her with an envelope in which to mail the records. It appears that included in the records that Ratulowski submitted after the hearing were the roughly 14 relevant pages discussed above.

There is no basis to believe that any medical records that were not presented to the ALJ are somewhere in existence. Even if the court were willing to entertain such speculation, as the ALJ noted during the hearing, it is extremely unlikely for a health care provider to retain records for 30 years. If other records existed, Ratulowski would be most likely to have them. The ALJ appropriately inquired of Ratulowski if she had any such records. When Ratulowski said she did, the ALJ left the record open and allowed her to submit this additional information, which she did. The records she submitted were then considered by the ALJ.

Therefore, although Ratulowski's waiver of counsel was invalid, she was not prejudiced by this defect. Remand is not necessary because the ALJ fulfilled his responsibility to appropriately develop the record.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner is **affirmed**. The Clerk shall enter judgment dismissing plaintiff's complaint and this action.

Dated at Milwaukee, Wisconsin this <u>19th</u> day of October, 2009.

s/AARON E. GOODSTEIN
U.S. Magistrate Judge

9